**BROCK & SCOTT, PLLC**
By: Andrew L. Spivack, Esquire, Identification No. 84439
2011 Renaissance Boulevard, Suite 100
King of Prussia, PA 19406
Telephone: (844) 856-6646
E-mail: andrew.spivack@brockandscott.com
*Attorneys for Freedom Mortgage Corporation*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION | CIVIL ACTION NO. 5:23-CV-01220 KBH |
| V. LUIS MIGUEL RIVERA | MEMORANDUM OF LAW |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TO DISMISS APPEAL WITH PREJUDICE

### PRELIMINARY STATEMENT

Appellant, Luis Miguel Rivera ("Rivera"), filed the instant appeal on March 28, 2023. alleging that the Bankruptcy Court committed an error when it granted Freedom Mortgage Corporation (hereinafter referred to as "Freedom") relief from the automatic stay given the fact that Rivera (allegedly) rescinded the mortgage. The issues raised in this appeal are almost identical to those issues raised and plead in Rivera's Complaint filed in 5:23-CV-00653-JLS. Despite Rivera's claims that he rescinded the subject Purchase Money Mortgage, he fails to acknowledge that Freedom had filed a foreclosure of the subject Mortgage in the Court of Common Pleas of Berks County, Pennsylvania on March 31, 2022 under docket 22-03210, which action has resulted in the entry of Judgment in favor of Freedom on May 20, 2022 and that pursuant to the Writ of Execution in that matter, a foreclosure Sheriff's sale is currently scheduled with the Berks County Sheriff for June 9, 2023

Rivera's Appeal is a rehash of the allegations raised in his Complaint filed in 5:23-CV-00653-JLS. This contains nothing more than conclusory allegations and generalizations. Rivera

1

provides no valid reason as to why the Bankruptcy Court committed error when it abstained from hearing any issues regarding a recission when a valid mortgage foreclosure judgment was entered. Freedom must be permitted to dismiss the within appeal with prejudice under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and F.R.C.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

**I.     FACTS**

By Deed dated June 5, 2019, title to the property commonly known as 1925 Reading Avenue, Reading, PA 19609 ("Property") was vested in Luis M. Rivera a/k/a Luis Miguel Rivera ("Rivera"). Said Deed was recorded with the Berks County Recorder of Deeds on June 14, 2019, as Instrument Number 2019018911. See **Exhibit "A"**.  In order to secure the funds to purchase the Property, Rivera executed a Purchase Money Mortgage dated June 7, 2019, to Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Stearns Lending LLC, its successors and assigns. Said Mortgage was recorded with the Berks County Recorder of Deeds on June 14, 2019, as Instrument Number 2019018912 ("Mortgage"). See **Exhibit "B"**.  By assignment of Mortgage executed on February 3, 2020, Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Stearns Lending LLC, its successors and assigns assigned the Mortgage to Freedom Mortgage Corporation ("Freedom"). Said Assignment of Mortgage was recorded with the Berks County Recorder of Deeds on February 4, 2020, as Instrument Number 2020004298 ("Assignment"). See **Exhibit "C"**.

On March 31, 2022, Freedom initiated foreclosure proceeding in the Court of Common Pleas of Berks County, Pennsylvania under docket 22-03210 as a result of Rivera's default under the terms of the Mortgage.  See **Exhibit "D"**. On May 20, 2022, Judgment was entered in the Foreclosure Action in favor of Freedom and against Rivera in the amount of $188,039.87. See **Exhibit "E"**. A foreclosure Sheriff's sale of the Property was scheduled for November 10, 2022. On August 19, 2022, Rivera filed a Motion to Dismiss the Foreclosure Complaint, which was denied by Court of Common Pleas of Berks County, Pennsylvania on October 21, 2022. See **Exhibit "F"**.

On November 9, 2022, the day before the foreclosure Sheriff's sale, Rivera filed a Chapter 13 Bankruptcy in the Eastern District of Pennsylvania under case number 22-13016, imposing an automatic stay upon the foreclosure. As a result of the automatic stay, the foreclosure Sheriff's sale was postponed and is presently scheduled for June 9, 2023.

On February 9, 2023, Freedom filed a Motion in Bankruptcy Court seeking Relief from the Automatic Stay. The Motion indicated that Rivera was post-petition delinquent for December 1, 2022 thru February 1, 2023. On February 16, 2023, while River's Chapter 13, Bankruptcy case was still pending, Rivera filed the instant Complaint in the Eastern District of Pennsylvania alleging that he mailed a "Notice of Right of Recission" pursuant to the Truth-in-Lending Act to Stern Lending LLC and MERS "Mortgage Electronic Registration Systems Inc" by certified mail and attached evidence of the mailing by certified as Exhibit B to the Complaint.

On March 14, 2023, a hearing was held regarding Freedom's Motion for Relief from the Automatic Stay. At the hearing, Rivera advised the Bankruptcy Court of the issues raised in this matter as well as the same issues raised in 5:23-cv-00653-JLS. The Bankruptcy Court then issued an order granting Freedom relief from the automatic stay.

On March 28, 2023, Rivera filed a Notice of Appeal of the order that granted Freedom relief from the automatic stay. On April 24, 2023, Rivera submitted his Brief to the Court, all of the issues raised in the current appeal mirror those same issues raised and plead in 5:23-CV-00653-JLS.

Based on the face of the appeal and matters of public record, Rivera's Appeal must be dismissed with prejudice under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and F.R.C.P. 12(b)(6) for failure to state any claim upon which relief can be granted.

## II.     LEGAL REASONING AND ARGUMENTS.

### A.     THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM FOR RESCISSION OF THE MORTGAGE AND MUST BE DISMISSED WITH PREJUDICE

#### 1.     STANDARD OF REVIEW

F.R.C.P. 12(b)(6) requires dismissal where, as here, a complaint lacks factual allegations sufficient to establish a proper and plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662 (2009). The "short and plain statement of the claim" requirement of F.R.C.P. 8(a)(2) is not satisfied by a complaint that amounts to an "unadorned, the defendant-unlawfully-harmed-me accusation." Id.  A complaint must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

In analyzing a motion to dismiss pursuant to F.R.C.P. 12(b)(6), "the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing Iqbal at 1950).  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citing Iqbal at 1950).  The "plausibility" analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 211 (citing Iqbal at 1949).  A claim is sufficiently plausible only if "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (citing Iqbal at 1949). On a motion to dismiss, the Court may consider matters of public record. Wishnia v. U.S. Bank N.A., No. 20-7898, 2021 WL 912746, at *3 n.7, 2021 U.S. Dist.

LEXIS 44736, at *9 n.7 (D.N.J. Mar. 10, 2021) (citing In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Overseas Lease Grp. v. Plocher Constr. Co., 800 Fed. App'x 79, 81 n.7 (3d Cir. 2020)) (citations omitted) ("In assessing this sufficiency of the pleadings, this Court may consider additional 'integral' items beyond the four corners of the Complaint without converting this motion to dismiss into one for summary judgment. These items include matters of public record, indisputably authentic documents, and court orders.")). Consequently, this Court may take judicial notice of the publicly recorded Deed, Mortgage and Assignment as well as the State Court filings within the foreclosure action.

The Appeal wholly fails to pass these tests, barely even epitomizing "a formulaic recitation of a cause of action's elements". Even if the Appeal had sufficiently pled a plausible right to relief at law – which it does not -- it is devoid of sufficient factual content because it fails to provide the necessary details to establish that Rivera had a right to rescission, timely exercised that right, or (most importantly) that the Bankruptcy Court had standing to even review the issues raised by Rivera regarding the recession (see below).

## 2. THE BANKRUPTCY COURT LACKED STANDING TO REVIEW THE TILA AND RECISSION CLAIMS

### a. The arguments raised by Rivera in Bankruptcy Court were not core proceedings.

The power of a bankruptcy court to enter final judgment is limited both by statute and by the Constitution. The bankruptcy jurisdiction statute, 28 U.S.C. § 157, allows bankruptcy courts to enter final judgments in "core proceedings," which are matters that arise under the Bankruptcy Code or arise in a bankruptcy case and would have no existence outside of bankruptcy. 28 U.S.C.

§ 157(b); see also MDC Innovations, LLC v. Hall, 726 Fed. Appx. 168, 171 (4th Cir. 2018) (discussing statutory distinction between matters "arising under" the Bankruptcy Code and matters "arising in" a bankruptcy case, both of which are core proceedings because they "would have no existence outside of the bankruptcy") (citation and internal punctuation omitted).

Section 157(b)(2) lists 16 core proceedings that are within a bankruptcy court's jurisdiction to enter final judgments. However, the Supreme Court has held that Article III of the Constitution imposes limitations on such jurisdiction. Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 28 (2014) ("even though bankruptcy courts are statutorily authorized to enter final judgment on a class of bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims") (citations omitted). Jurisprudence on this topic derives principally from Stern v. Marshall, 564 U.S. 462 (2011), which involved an adversary proceeding initiated by a creditor for defamation, to which the bankruptcy debtor responded by asserting a counterclaim for tortious interference. Id. at 470. The Supreme Court found that the debtor's counterclaim was a statutory core proceeding, and further that the creditor had consented to bankruptcy court jurisdiction on its affirmative claim. Id. at 481. The Supreme Court nevertheless held that, even though the statute permitted the entry of final judgment, "Article III of the Constitution does not." Id. at 482. The Court explained its conclusion by reference to the purpose and function of Article III:

> Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision making if the other branches of the Federal Government could confer the Government's "judicial power" on entities outside Article III. That is why we have long recognized that, in general, Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty. When a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the

6

> responsibility for deciding that suit rests with Article III judges in Article III courts.
> Id. at 484 (internal citations and punctuation omitted).

The Supreme Court has repeatedly recognized that claims asserting private rights under state law are matters that exist outside of bankruptcy and therefore must be decided, absent consent of the parties, by an Article III court. See Stern, Id. at 494 (describing "entry of a final, binding judgment by a court with broad substantive jurisdiction, on a common law cause of action" as a "prototypical exercise of judicial power" reserved to Article III courts); N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71 (1982) ("the restructuring of debtor creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case"); Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 682 (2015) (citing Stern and Northern Pipeline as recognizing that, absent consent, only an Article III court may enter judgment "in a traditional contract action arising under state law"); see also Moses v. CashCall, Inc., 781 F.3d 63, 70-71 (4th Cir. 2015); MDC, 726 Fed. Appx. at 172.

The foregoing authorities set forth the analysis applicable to determining the proper scope of the bankruptcy court's jurisdiction. The Court must first determine whether Congress has designated the claims at issue as core proceedings under the Bankruptcy Code. If the claims instead are non-core and merely "relate to" the bankruptcy, then absent consent the bankruptcy court does not have power to enter a final judgment. However, even if the claims are found to be a core proceeding, the bankruptcy court lacks power to enter a final judgment if the claims are common law matters that could have been brought in state court. The cases refer to such matters as "Stern claims," and the Supreme Court has made clear that they must be adjudicated as non-core proceedings. Arkison, 573 U.S. at 37-38 (fraudulent conveyance causes of action are "Stern

7

claims" and therefore must be tried pursuant to non-core procedures).

Rivera's claims are not a core proceedings. In fact, the issues raised are all defenses that he could have and should have raised in the State Court Mortgage Foreclosure action. Rivera's attempt to raise these issues as a defense to the Motion for Relief after judgment was entered was precluded by law. Mortgage foreclosure judgment is *res judicata* to all defensive claims made or which could have been raised in that action. Stuart v. Decision One Mortgage, 2009 Pa.Super.103; 2009 Pa.Super.LEXIS 1000 (2009); Del Turco v. Peoples Home Savings Assn, 329 Pa.Super.258 (1984); Friedman, Ladner Pennsylvania Real Estate Law, Fifth Edition (Bisel, 2008), Section 27.02(b), page 27-4. See also McGill v. Southwark Realty Co., 828 A.2d 430, at 435 (Pa.Cmwlth.2003).

Where the decision allegedly precluding a subsequent action was decided by a state court, then the federal courts must apply the preclusion principles adopted by that state. Gregory v Chehi, 843 F.2d 111, at 116 (3d Cir. 1988). In addition to state principles of preclusion, Federal principles of jurisprudence respectfully deprived the Bankruptcy Court and this Court of jurisdiction over these claims, pursuant to the Rooker –Feldman Doctrine.

### b. All of the issues raised by Rivera regarding recission are barred by res judicata

"Res Judicata, which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies." Rearick v. Elderton State Bank, 97 A.3d 374, 380 (Pa. Super. 2014). The res judicata doctrine relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." In re Stevenson, 615 Pa. 50, 40 A.3d 1212, 1222 (2012). Res Judicata

"preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate." Id. For res judicata to apply, there must be a concurrence of four identities: (1) identity of issues; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Res Judicata "prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication." Wilkes v. Phoenix Home Life Mut. Ins. Co., 587 Pa. 590, 902 A.2d 366, 399 (2006). Thus, "[a] party must raise all matters related to an issue at first opportunity or be forever barred from raising them again." Winpenny v. Winpenny, 434 Pa.Super. 348, 643 A.2d 677, 679 (1994). It makes no difference if that party was pro se. Id. Pennsylvania courts have also consistently held that default judgments are final judgments on the merits for purposes of res judicata regarding transactions that occurred prior to the entry of judgment. Stuart v. Decision One Mortg. Co., LLC, 975 A.2d 1151 (Pa. Super. Ct. 2009).

The doctrine of res judicata applies here to bar Rivera's appeal, which is clearly an attempt to collaterally attack the State Court foreclosure action after Judgment was entered in favor of Freedom on May 20, 2022 and Rivera's Motion to Dismiss the foreclosure was denied on October 21, 2022. Rivera had the opportunity to raise all of these defenses within the foreclosure but failed to do so and is barred now from doing so in this proceeding. On this basis alone, Rivera's Appeal must be dismissed with prejudice.

### c. The Rooker-Feldman doctrine deprived the Bankruptcy Court and this Court of Jurisdiction.

The term "state court loser" first appears – at least in Rooker-Feldman jurisprudence – in Exxon Mobil Corp., et al v. Saudi Basic Industries Corp., et al, 544 U.S. 280, at 284; 125 S.Ct. 1517, at 1521 (2005), and indeed, both Mr. Rooker (in Rooker v. Fidelity Trust Co., 263 U.S. 415;

9

44 S. Ct. 149 (1923) and Mr. Feldman (in D.C. Court of Appeals v. Feldman, 460 U.S. 462; 103 S.Ct. 1303 (1983) were "state court losers". That is the most common fact pattern to which Rooker-Feldman applies. But as later cases make clear, the Rooker-Feldman doctrine has a much broader sweep; it deprives the federal courts (other than the Supreme Court) of jurisdiction to hear cases brought by anyone – state court loser or not – if "…the federal claim is "inextricably intertwined" with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." Walker v. Horn, 385 F.3rd 321, at 329 (3rd Cir., 2004). Further, the Third Circuit has held that the Rooker–Feldman Doctrine prohibits the adjudication of an action in which the relief requested will have the effect of voiding the state court's ruling. In re Knapper, 407 F.3d 573 (3d Cir.2005). In the Knapper case, *supra,* the Third Circuit ruled that a default judgment in mortgage foreclosure was sufficient to trigger the application of the Rooker-Feldman Doctrine.

In Pennsylvania, a state court foreclosure judgment "… necessarily includes a finding that the mortgage was valid, and that the mortgage holder who is the plaintiff in a foreclosure action has standing to foreclose." Lewis v. Citibank, N.A., 179 F. Supp. 3rd 458, at 462 (E.D. Pa., 2016). Therefore, in order for this Court to undo the relief order of the Bankruptcy Court and indicate that Rivera rescinded his mortgage this Court would have to invalidate the state court foreclosure judgment, which it lacks the power to do. Because this court lacks jurisdiction to consider the Rivera's claims this appeal must be dismissed with prejudice.

3. **ALTERNATIVELY, IF THE COURT DETERMINES THAT THE BANKRUPTCY COURT HAD JURISDICTION THEN THERE IS NO RIGHT OF RESCISSION AS THE SUBJECT MORTGAGE IS A PURCHASE MONEY MORTGAGE AND NOT A REFINANCE**

As evidenced by the fact that the subject Deed and Mortgage were completed contemporaneously, the subject Mortgage was not a refinance of a prior existing mortgage but

rather is a Purchase Money Mortgage used by Rivera to finance the acquisition of the subject property. Consequently, Rivera's claim for rescission fails as a matter of law because a claim for rescission under the Truth-in-Lending Act ("TILA") is not available on a Purchase Money Mortgage. See 15 U.S.C. 1635(e)(1) and 12 CFT 226.23(f)(1) (exempting 'residential mortgage transactions' from the TILA rescission remedy); 15 USC 1602(w)(defining residential mortgage transaction as where "a mortgage…or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."). This restriction applies even where only part of the loan proceeds is used for the acquisition of the property. See Perkins v. Central Mortgage Corp., 422 F. Supp. 2d 487, 490 (E.D. Pa 2006). On this basis alone, Rivera's appeal must be dismissed with prejudice as no right of rescission even exists as a matter of law.

    **4.** **ALTERNATIVELY, IF THE COURT DETERMINES THAT THE BANKRUPTCY COURT HAD JURISDICTION THEN RIVERA'S CLAIM FOR RESCISSION UNDER THE TRUTH-IN-LENDING ACT IS BARRED BY THE STATUTE OF REPOSE**

For argument's sake, even if a right of rescission had existed with regard to the subject mortgage, Rivera's claim for rescission is untimely and barred by the statute of repose. "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . ." 15 U.S.C. § 1635(f)  "15 U.S.C. § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." Beach v. Ocwen Federal Bank, 523 U.S. 410, 412 118 S. Ct. 1408, 140 L. Ed 2d 566 (1998). "Therefore 15 U.S.C. § 1635(f) is a statute of repose and represents an absolute limitation on rescission actions which bars any claims filed more than three years after the consummation of the transaction, depriving

the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period." Miguel v. Country Funding Corp, 309 F.3d 1161, 1164-1165 (9th Cir. Haw. 2002). "Borrowers may not assert their right to rescind, either offensively or defensively, more than three years after the consummation of the transaction." Harris v. EMC Mortg. Corp., 2002 U.S. Dist. LEXIS 12251 (E.D. Pa. Apr. 10, 2002).

Thus, even if any claim for rescission existed, same expired on June 7, 2022, three (3) years after the origination of the subject loan. In Rivera's current action before Judge Schmehl he provided certified mail receipts for the mailing of Rivera's alleged notice of recission attached to his Complaint as Exhibit B. These receipts indicate that the mailing occurred on November 2, 2022, which is three (3) years, four (4) months and twenty-six (26) days after origination of the June 7, 2019 Purchase Money Mortgage, beyond the three (3) year statute of repose for recission under the Truth-in-Lending. Moreover, despite Rivera's actual knowledge that the subject mortgage had been assigned to Freedom, Rivera never sent any Notice of Rescission to Freedom and thus, any claim for rescission fails as a matter of law. On this basis alone, Rivera's Complaint must be dismissed with prejudice.

## 5. RIVERA'S CLAIM FOR RESCISSION UNDER THE TRUTH-IN-LENDING ACT FAILS AS A MATTER OF LAW FOR FAILURE TO DEMONSTRATE AN ABILITY TO TENDER BACK THE LOAN PROCEEDS

Again for argument sake, even if a right of rescission had existed with regard to the subject Purchase Money Mortgage, and Rivera had exercised that right timely, Rivera's claim for rescission still fails as a matter of law because pursuant to 15 U.S.C. § 1635(b), Rivera is required to tender and return the loan proceeds to the lender. In Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir. 1976), the Court stated that in enacting 15 U.S.C. § 1635(b), "Congress did not intend to require a lender to relinquish its security interest when it is now known that borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in

discharging the prior obligations of the borrowers." Id. at 1221. "When a borrower is unable to tender the loan proceeds, the remedy of unconditional rescission is inappropriate." Parker v. Long Beach Mortg. Co., 534 F. Supp. 2d 528, 537 n.9 (E.D. Pa. 2008). Consequently, for argument's sake, even if any claim for rescission existed, Rivera has failed to establish any ability to tender and return the loan proceeds and thus, the claim for rescission has no merit and the Complaint must be dismissed with prejudice.

### 6. SINCE THE ONLY ISSUE PROPERLY BEFORE THE BANKRUPTCY COURT WAS WHETHER RIVERA WAS POST PETITION DELINQUENT THE ORDER OF THE BANKRUPTCY COURT WAS VALID

As stated above, the "defenses" raised by Rivera regarding recission were precluded by res judicata, collateral estoppel and the Rooker-Feldman doctrine. The only issue that the Bankruptcy Court could review was whether Freedom properly prosecuted its 11 USC 362 Motion Seeking Relief from the Automatic Stay. Rivera provided no defense to Freedom's assertion that Rivera failed to tender the post-petition mortgage payments for December 2022 through February 2023. Based on this, the Bankruptcy Court properly granted Freedom relief from the automatic stay. The Bankruptcy Court did not commit any reversible error.

### III. CONCLUSION

For the above reasons, it is respectfully requested that the Court grant the present Motion to Dismiss the Appeal of Luis Miguel Rivera with Prejudice and award Freedom such other relief as is just and proper.

BROCK & SCOTT, PLLC

By: /s/ Andrew L. Spivack
Dated:                    Andrew L. Spivack, Esquire
                          Attorney for Freedom Mortgage Corporation